**UNITED STATES DISTRICT COURT**
**Eastern District of Virginia – Alexandria Division**

Case # 1:26 cv 1271

MATTHEW A. LeFANDE
P.O. Box 22
Midland VA 22728

Plaintiff,

v.

JONA MIKELL BLOCKER
14854 Courage Drive
Woodbridge VA 22193

and

VLADIMIR DMITRIEVICH TORBENKO
14854 Courage Drive
Woodbridge VA 22193

and

FLOYD PLATER ALLEN
6893 N. Stuart Road
King George VA 22485

and

ROBERT JOSEPH GUDZ
8815 Liberty Oaks Place
Woodbridge VA 22193

and

WILLIAM A. WHITE
7266 Linden Tree Lane
Springfield VA 22152

Defendants.

**VERIFIED COMPLAINT**
**RICO 18 U.S.C. § 1961 *et seq.***

The Plaintiff moves this honorable Court for judgment against the Defendants on the grounds and for damages as hereinafter set forth.

**Parties, Jurisdiction and Venue**

1. Plaintiff Matthew LeFande is a United States citizen and a resident of Fauquier County in Virginia.

2. Plaintiff is a person as defined by 18 U.S.C. § 1961 (3).

3. Defendant Jona Blocker is a United States citizen residing in Prince William County in Virginia.

4. Defendant Vladimir Torbenko is a Russian national residing in Prince William County in Virginia.

5. Defendant Floyd Allen is a United States citizen residing in King George County in Virginia.

6. Defendant Robert Gudz is a United States citizen residing in Prince William County in Virginia.

7. Defendant William White is a United States citizen residing in Fairfax County in Virginia.

8. Defendants are also persons as defined by 18 U.S.C. § 1961 (3).

9. The Plaintiff complains of herein two or more acts of racketeering activity as defined by 18 U.S.C. § 1961 (1) committed by the Defendants within the last two years to take control of the Commonwealth Protection Institute, a corporation engaged in interstate commerce, in violation of 18 U.S.C. § 1962 (b) and (c).

10. The Defendants have further conspired to violate 18 U.S.C. § 1962 (b) and (c), in violation of 18 U.S.C. § 1962 (d).

11. Under 18 U.S.C. § 1964 (a) and (c), the United States District Court shall have original jurisdiction over these claims.

12. This action is now brought in the district and division in which the Plaintiff resides. 18 U.S.C. § 1965 (a).

13. The Plaintiff further brings additional claims arising under common law and Virginia Commonwealth statutory law, including Code of Virginia § 18.2-500.

14. Such claims arise from the same transactions and occurrences as the federal claims referenced above as to form part of the same case and controversy under Article III of the United States Constitution.

15. No claim herein raises any novel or complex issue of state law.

16. No state law claim herein predominates over the federal claims which this court maintains original jurisdiction.

17. Under 18 U.S.C. § 1367, the United States District Court shall have supplemental jurisdiction over these non-federal claims against each of the Defendants.

18. The Plaintiff further proceeds derivatively on behalf of a non-stock corporation for the *ultra vires* acts of the Defendants as provided by Code of Virginia § 13.1-828 B (2).

**Statement of Facts**

19. Plaintiff Matthew LeFande is the founder, Training Director, Secretary and Treasurer of the Commonwealth Protection Institute (hereinafter referred to as "CPI"), a non-stock corporation registered with the Virginia State Corporation Commission and an Internal Revenue Code 501 (c)(3) Training School regulated by the Virginia Department of Criminal Justice Services. See VA. H.J.R. 764 (2009).

20. LeFande formed CPI in 2005 and appointed two other persons and himself to the Board of Directors, including Defendant William White.

21. Upon LeFande's motion to CPI's Board of Directors, Defendant Floyd Allen was appointed as CPI's Executive Officer in 2005. Such appointment allowed Allen to act on behalf of CPI, but only at the direction of the Board of Directors.

22. At that time, LeFande was appointed Secretary and Treasurer to CPI upon a unanimous vote of the CPI Board of Directors. As Secretary and Treasurer, LeFande was delegated complete authority and control over the books and accounts of the organization, including those accounts further described herein. Such authority is unchanged to the present day.

23. On December 31, 2007, LeFande appointed Defendant Robert Gudz to the CPI Board of Directors.

24. LeFande has particularly unique abilities in the fabrication and repair of unusual and historic firearms useful for CPI's training programs.

25. Since CPI's inception, LeFande has used his skills to build up a library of firearms for such training programs.

26. None of the Defendants have any particular skills with regard to fabrication and repair of firearms, or any kind of machining or welding skills necessary for the conduct of these activities.

27. CPI holds an ATF Federal Firearms License, number 1-54-061-07-0F-23858. (Herein after referred to as "FFL").

28. CPI is a Special Occupational Taxpayer (herein, "SOT"), authorized by the ATF to manufacture firearms regulated by the National Firearms Act of 1934, Internal Revenue Code, Chapter 53. (Hereinafter referred to as "NFA").

29. As an FFL licensee and a Special Occupational Taxpayer, CPI, by and through LeFande as its designated "Responsible Person" (see 18 U.S.C. § 841 (s), 27 CFR § 555.11), is responsible for accounting for and safeguarding all firearms in its possession, maintaining a written record of the origin and disposition of any firearm it receives or manufacturers. 27 CFR §§ 478.121, 479.131.

30. Each transaction conducted by CPI involving NFA firearms requires either formal written notice to, or permission of, the ATF to conduct each transaction such that the ATF can maintain its record of all NFA firearms known as the NFA Registry. 28 U.S.C. § 5841.

31. Violations of these recordkeeping requirements can implicate criminal penalties of fines of up to $10,000 or imprisonment up to ten years. 28 U.S.C. § 5871.

32. LeFande has been the sole signatory to every transaction of CPI with ATF since the organization's inception in 2005 and until October 2023, when the Defendants began forging documents and falsely claiming to be acting on behalf of CPI as described herein.

33. The eForms system is an internet portal maintained by the ATF which is used by Special Occupational Taxpayers to conduct transactions and notices required by the NFA. See https://www.atf.gov/firearms/applications-eforms.

34. Use of the eForms system requires registration of individual users such as LeFande who then affiliate in the system as employees of FFL entities. Access to the portal is then controlled by use of usernames and passwords unique to the individual user.

35. The eForms login page warns that the unauthorized or improper use of the portal may result in civil or criminal penalties.

36. LeFande registered with eForms and began using the current version of the portal in March 2022, affiliated with CPI as its "Responsible Person".

37. In mid 2022, Defendant Vladimir Torbenko began appearing at gun show events in Virginia that LeFande attended with Defendant Jona Blocker. Torbenko appeared to make significant and ongoing efforts to befriend various United States government employees and contractors who attended the event.

38. Upon learning of Defendant Blocker's government contracting and consulting activities, Defendant Torbenko would regularly visit Blocker, first at the gun show events and then at her home in Woodbridge, Virginia, where LeFande lived with Blocker and where Blocker worked from home as a government consultant. Torbenko frequented Blocker with dining, expensive gifts and seemingly endless offers of assistance with her business activities.

39. In August of 2023, Defendant Torbenko began giving LeFande thousands of dollars worth of gifts in the form of machine gun parts and Soviet military paraphernalia.

40. LeFande, who has training and experience in counter-intelligence matters, became increasingly suspicious of Defendant Torbenko's intentions. LeFande suspected Torbenko was acting as a foreign agent and that his conduct with Blocker was a security risk. On September 7, 2023, LeFande demanded that Torbenko take back his belongings at Defendant Blocker's home including a Russian made AK74 type rifle and not speak to him further. Blocker became enraged with LeFande for dismissing Torbenko.

41. Following the dismissal of Defendant Torbenko, Defendant Blocker continuously argued with LeFande regarding LeFande's administration of CPI. On

46. On September 25, 2023, LeFande appeared before the Juvenile and Domestic Relations Court of Prince William County. On that date, the court issued a Preliminary Protective Order against Defendant Blocker. JA099045-01-00.

47. On September 29, 2023, Defendant Blocker caused to be served upon LeFande a Notice Forbidding Trespass for 4818 Midland Road in Fauquier County, the registered place of business for CPI since 2017. Blocker had no business relationship or control over this property whatsoever.

48. By mid-October 2023, Defendant Torbenko was frequenting Defendant Blocker's home in Woodbridge and later appearing regularly at gun show events with her.

49. Defendant Torbenko counseled and aided Defendant Blocker on means to retaliate against LeFande for the protective order and to take control over CPI. Torbenko was observed by multiple persons on more than one occasion seeking out associates of LeFande at gun show events and insisting that they speak to Blocker about LeFande. Such conduct violated, *inter alia*, 18 U.S.C. § 1513 (f).

50. By mid-October 2023, Defendant Blocker had seized all of LeFande's personal property, and a substantial amount of property belonging to CPI, located at Blocker's residence in Woodbridge and entrusted to LeFande by CPI. Blocker demanded through intermediaries that LeFande cease the Protective Order proceedings or she would not return the property. Such conduct violated, *inter alia*, 18 U.S.C. § 1513 (b).

51. During this time, Defendant Blocker persuaded the other Defendants to enter into a conspiracy with one another to injure LeFande in his trade and profession in the manner discussed with the Prince William County Police Officers on September 22, 2023. Each of the actions of the Defendants described below was an affirmative act in furtherance of that conspiracy.

52. On October 19, 2023, Defendant Blocker emailed the ATF and asked for guidance to remove the existing "responsible persons" from the CPI FFL and add new "responsible persons". In this email, she falsely claimed "Each of these persons has been removed from control of the corporation, and is no longer participating in the corporation." Blocker further falsely claimed "The corporation is restructuring…" Blocker further mentioned "the executive Director of the corporation" [*sic*] a title which has never existed in CPI. No corporate resolution or other authority existed which would have permitted anyone to make these representations on behalf of CPI. Such conduct violated, *inter alia*, 18 U.S.C. §§ 924 (a)(1), 1001 (a).

53. On October 20, 2023, Defendant Blocker wrote to the ATF via United States Postal Service across state lines and demanded the removal of LeFande as a "Responsible Person" from the CPI FFL. Included in her mailing were applications for Blocker, and Defendant Allen and Defendant White to add themselves as "Responsible Persons" to the CPI FFL. Each of these Defendants falsely claimed to ATF under oath to have lawful authority to administer CPI's FFL. The Defendants' conduct violated, *inter alia*, 18 U.S.C. §§ 924 (a)(1), 1001 (a). 1621 (2).

54. These Defendants were without authority from the CPI Board of Directors to take any act regarding the CPI FFL. Such authority was solely delegated to LeFande by CPI's Board of Directors *ex officio* his appointment as Secretary and Treasurer.

55. Adding Defendant Blocker to the CPI FFL was fraudulent and a violation of federal law, as Blocker was not any kind of officer or employee of CPI and is a "disqualified person" under 18 U.S.C. § 922 (g), a user of controlled substances, as defined in section 102 of the Controlled Substances Act, codified at 21 U.S.C. § 802. Such conduct also violated, *inter alia*, 18 U.S.C. §§ 924 (a)(1), 1001 (a). 1621 (2).

56. On October 26, 2023, Defendant Blocker again emailed the ATF and falsely identified herself as "Commonwealth Protection Institute (CPI) Management Partner", a nonsensical title given that CPI is a non-stock corporation and not a partnership. Blocker again mentions a non-existent Executive Director for the corporation. Blocker falsely describes an also nonsensical "restructuring of the board of directors of the corporation" in complete antagonism with the inception documents of the corporation. Such conduct violated, *inter alia*, 18 U.S.C. §§ 924 (a)(1), 1001 (a).

57. On or about November 1, 2023, Defendant Blocker filed for use of the fictitious trade name "Midland Training Center" for her own company, previously registered by CPI and in regular use by CPI since 2019. To the present day, Blocker maintains a website with the domain name mtc-va.us. Such website falsely describes her non-existent activities at CPI's Midland facility.

58. On or about November 13, 2023, Defendant Blocker placed a series of fraudulent forwarding orders for CPI's mailbox at the Midland Post Office, most likely through the U.S. Postal Service's internet portal. These orders forwarded mail from that mailbox to Blocker's private mailbox service in Woodbridge and included mail addressed to CPI, its various registered trade names and a trust maintained for the benefit of CPI controlled by LeFande. Blocker had no authority whatsoever to handle or redirect the mail of CPI and claims to the contrary to the Postal Service at the time of the forwarding orders was false.

59. On or about November 23, 2023, the Defendants attempted to commandeer and divert CPI's email and internet domains in the same manner as Blocker discussed with the Prince William County Police Officers on September 22, 2023. As a result, LeFande lost several weeks of emails related to CPI.

60. On November 29, 2023, the ATF received a letter with a badly cut and paste forgery of CPI's official letterhead, purportedly signed by "CPI Executive Director". The letterhead falsely bears Defendant Blocker's long time personal cell phone number as the purported official telephone number for the corporation. Blocker falsely claims in the letter that CPI is notifying ATF of "a change in control within the organization regarding the individuals who have the power to direct the management and policies of CPI." Blocker directs all questions to herself, falsely identified again as the nonsensical "CPI Manager/Partner". Such conduct violated, *inter alia*, 18 U.S.C. §§ 924 (a)(1), 1001 (a).

61. In two additional emails over interstate internet connections to ATF, dated November 29, 2023, Defendant Blocker again falsely identifies herself as the nonsensical "Manager/Partner CPI". An email from Blocker to ATF dated November 30, 2023 has the signature as "CPI Manag/Partner" [*sic*]. An email to ATF from Blocker dated February 8, 2024 has the signature "Manager/Parter CPI" [*sic*]. Such conduct violated, *inter alia*, 18 U.S.C. §§ 924 (a)(1), 1001 (a).

62. On February 6, 2024, Defendant Blocker emailed ATF and again falsely identified herself as "Manager/Partner CPI" and falsely claimed that LeFande is "unavailable". Such conduct violated, *inter alia*, 18 U.S.C. §§ 924 (a)(1), 1001 (a).

63. ATF administrators revoked LeFande's access to the eForms account one hour later. *Id.* Blocker immediately entered the eForms system and began reading information in the system regarding CPI's firearms transactions and tax information she had no lawful right to access. Blocker also used the eForms system to convey CPI property to the Defendants. Blocker's fraudulent access to the ATF's restricted computer systems violated *inter alia*, 18 U.S.C. §§ 1030 (a) (2)(B), (3), (4), (5)(C). As a result of

these Defendants' false statements and without any attempt by ATF to verify their claims, LeFande was removed from his access to the ATF eForms account for CPI and has not been able to restore it.

64. On February 7, 2024, Defendant Blocker falsely reported to the Prince William County Police that LeFande had stolen three firearms from her. Blocker confusingly described herself as a "co-partner" in CPI with LeFande. Blocker produced to the police a forged handwritten receipt purporting to be evidence of her personal purchase of an NFA regulated firearm on November 14, 2022. ATF's own NFA registry records demonstrate that such NFA firearm was in fact sold to CPI on October 21, 2020, more than two years earlier.

65. Such report was known to Defendant Blocker to be false and defamatory, and was made with the specific intention of injuring LeFande in his trade and profession, attempting to subject LeFande to unwarranted criminal investigation and prosecution.

66. As a result of Defendant Blocker's false reports, her fraud upon ATF and her trespass upon government computer systems, the Prince William County Police made an extensive and unwarranted investigation regarding LeFande and caused ATF to conduct numerous firearms "trace" investigations upon Blocker's false pretenses.

67. On February 20, 2024, Defendant Blocker emailed ATF and again falsely identified herself as "Manager/Partner CPI" and inquired "Is there a way I can prevent [LeFande] from contacting your office and demanding a super user account?" Such conduct violated, *inter alia*, 18 U.S.C. §§ 924 (a)(1), 1001 (a).

68. The Defendants further sent the ATF a fraudulent change of address notification through the United States Postal Service causing a new FFL certificate for CPI to be mailed by ATF through the United States Postal Service to her at a private

mailbox service in Woodbridge, Virginia. Such conduct violated, *inter alia*, 18 U.S.C. §§ 924 (a)(1), 1001 (a).

69. The Defendants' unlawful possession of this FFL certificate is particularly precarious. Mere possession of the certificate, together with an evident willingness to misrepresent one's affiliation with the FFL entity, means they can contact a firearms dealer anywhere in the United States and purchase firearms over the counter or by mail without a background check or completion of ATF's Firearm's Transaction Record Form 4473. Such unauthorized transactions, if they have occurred, remain completely unknown to LeFande, and likely unknown to ATF as well.

70. As a direct result of his removal of access to the ATF account by these Defendants' fraud, LeFande has been unable to conduct transactions on the account, provide a complete accounting for the inventory of CPI's ATF regulated firearms and conduct other statutorily required functions for regulatory compliance. Such non-compliance immediately placed LeFande in potential legal jeopardy with ATF, and necessarily jeopardized CPI's licenses with ATF.

71. By February 22, 2024, Defendant Torbenko had moved into Defendant Blocker's home, on that date listing his address there as registered agent in a corporation filing for Industrial Base Foundation. Virginia SCC File Number 11660280. Torbenko co-resides with Blocker there to the present day.

72. In March of 2024, LeFande began notifying administrators of the eForms portal and employees of the ATF NFA Branch, that the Defendants had fraudulently gained access to CPI's eForms account and was now unlawfully accessing transaction data and taxpayer information to the exclusion of LeFande, and potentially conducting unauthorized firearms transactions.

73. ATF personnel failed to remediate the Defendants' fraudulent access to the system and it remains unabated to the present day. See *LeFande v. ATF*, 1:24 CV 2311 (E.D. Va. 2024).

74. On June 15, 2024, two days before Defendant Blocker's trial in Prince William Circuit Court for LeFande's Domestic Protection Order against her, Blocker and Defendant Gudz falsely claimed to Annette Elliott, the organizer of the Nation's Gun Show in Chantilly, Virginia, that Blocker instead had a domestic protection order against LeFande and that he was stalking her by being present at the same show he had been otherwise attending for nearly twenty years. Blocker repeated this claim to Virginia State Police Trooper Christopher Ihara at the show location.

75. Such claim was knowingly false and defamatory. Such claim was intended to injure LeFande in his trade and profession and to subject LeFande to unwarranted criminal investigation and prosecution, and to endanger his well being.

76. Solely as a result of the false statements of Defendants Blocker and Gudz, LeFande was seized and physically removed from the Nation's Gun Show by police and has been prohibited from attending any event made by the show's organizers.

77. Due to limitations in Fauquier County zoning at the Midland facility, the Nation's Gun Show was the sole lawful venue for CPI's retail sales of firearms.

78. Sometime prior to July of 2024, the Defendants obtained a copy of CPI's 2024-2025 Special Occupational Tax certificate, mailed to Defendant Blocker from the ATF through the United States Postal Service to her private mailbox service in Woodbridge.

79. On August 13, 2024, Defendant Allen emailed LeFande a letter evidently written by Defendant Blocker demanding access to CPI's accounts and bookkeeping.

Allen did so for an improper purpose not permitted under Code of Virginia § 13.1-933, solely that the Defendants could further interfere with LeFande's administration of CPI.

80. On August 21, 2024, and again on August 22, 2024, the Defendants filed a fraudulent amended Annual Report with the Virginia State Corporation Commission (SCC) for CPI. Defendant Blocker made such filing through the SCC's internet portal. The report falsely changed the address of the statutory registered agent for the corporation to Blocker's private mailbox service in Woodbridge. SCC filing numbers 2408217595587 and 2408227599674. Such Annual Report bore the simulated signature of Defendant Allen.

81. The Defendants were without authority to make any change to the address of the registered agent. LeFande had been the sole authorized registered agent of the corporation since its inception in 2005.

82. Under Code of Virginia § 13.1-811 it is a Class 1 misdemeanor "for any person to sign a document which he knows is false in any material respect with intent that the document be delivered to the [Virginia State Corporation] Commission for filing."

83. On September 12, 2024, the Defendants emailed the Virginia Department of Criminal Justice Services from an email alias named for the fictitious Midland Residents Community Action Group, community_action_12@protonmail.com, and falsely claimed CPI was operating without zoning authority at its training center in Midland, Virginia. The Defendants further claimed CPI's insurance provider was operating without lawful authority in Virginia. The Defendants attached many of the same documents regarding LeFande Defendant Blocker was seen previously distributing at gun shows in the company of Defendant Torbenko.

84. On information and belief, the Defendants at this time made the same claims to CPI's insurance agent in Portsmouth, Virginia and the insurance provider located in Southfield, Michigan.

85. As a result of the Defendants' claims, CPI's liability insurance was not renewed without notice or explanation shortly thereafter. Replacement insurance was obtained after a short lapse in coverage, but at approximately twice the premium cost.

86. Protonmail is Defendant Blocker's known longtime email service provider. In each instance of an anonymous or fictitious email address used in furtherance of the Defendants' frauds, the email service provider is invariably Protonmail. Based in Switzerland, Protonmail has only .28% of the United States market share for commercial email service providers, whereas Gmail has nearly 40% of the market share.

87. On October 1, 2024, the Defendants posted documents on the file sharing website Filebin entitled "Matthew_Lefande_is_crazy-DL.pdf. Links to this file were subsequently published on various social media platforms including Reddit and Facebook.

88. On that date, utilizing username DragonflyFar604, the Defendants posted on Reddit forum /partskits a false claim that LeFande had stolen a SIG SG552 rifle parts kit. The Defendants further stated "[LeFande] is a lunatic psychopath that steals from people – he stole this parts kit – it doesn't belong to him." Another user asked DragoflyFar604 in reply, "Please explain". This query went unanswered. Instead, the Defendants further stated "The kit is stolen property. [OP] committed larceny, and now he is trying to sell the kit." The Defendants then provided a link to the above Filebin .pdf file.

89. On October 7, 2024, Defendant Blocker, falsely impersonating a member of CPI by using an internet email account she created entitled "CPI-FFL Responsible Person" and the address CPI-FFL@ protonmail.com, wrote to the Virginia Department of General Services and demanded that LeFande be removed as a screener for CPI's participation in the Federal Surplus Property program. She further attempted to enroll herself as a screener so as to defraud the federal government of surplus property intended for non-profit organizations.

90. On October 10, 2024 Defendant Allen sent over email to LeFande another letter evidently drafted by Defendant Blocker, with pretended authority on behalf of CPI, falsely claiming LeFande to be stealing property of CPI and improperly disposing of it. Allen copied these letters to other members of the CPI Board who received these false allegations as a result. LeFande was instead disposing of unneeded CPI assets in the ordinary course of business as specifically permitted by Code of Virginia § 13.1-899 and rendering all such proceeds for the benefit of CPI. LeFande has conducted these liquidations of CPI assets in this manner since its inception in accordance with his authority as Treasurer.

91. The Defendants acted in each instance without any meeting of the CPI Board of Directors, any vote to act, and without any adopted resolution authorizing such action.

92. On that date, the Defendants utilizing eBay account joewieser40 posted a fake sales listing identical to one previously posted by LeFande on the official CPI eBay account for the sale for $4,500.00 of Motorola radios described in Defendant Allen's letter of October 10, 2024. The description of the fake eBay sales listing falsely claimed LeFande had stolen the radios. As a result of the defamatory claims by the Defendants

and slander to title, such radios listed by CPI did not sell and LeFande had to personally borrow additional money to fund CPI's ongoing operations.

93. On or about October 11, 2024, the Defendants again made a series of fraudulent forwarding orders through the internet portal of the United States Postal Service. This time, the Defendants named both CPI and LeFande personally for mail addressed to Midland, Virginia to be redirected to Defendant Blocker's private mailbox service in Woodbridge, Virginia.

94. On October 16, 2024, LeFande received multiple notices mailed to him at Midland via the United States Postal Service notifying him of the forwarding orders.

95. LeFande discovered the fraudulent SCC filings online and on October 30, 2024, filed amended filings to correct the address back to Midland, Virginia. SCC filing numbers 2410307860419 and 2410307860469.

96. On November 1, 2024, the Defendants using account Civil-Place-5099 again posted on Reddit "It's important that no one allow [LeFande] to build a kit for them. He has lost his ability to manufacture and is no longer an SOT. He's also a thief." Such statements were *per se* defamatory and amounted to a targeted attack on LeFande's trade and profession.

97. On November 4, 2024, the Defendants using account lefande-loves-dicks made a similar posting on Reddit forum /VAGuns.

98. On or about November 1, 2024, the Defendants received an NFA tax stamp mailed by ATF through the United States Postal Service for an ATF Form 1 approval submitted by LeFande on July 30, 2024 on behalf of CPI. ATF NFA Control Number 20241025583. LeFande is now in apparent violation of the NFA recordkeeping

requirements by not being able to maintain this certificate and stamp in his records as otherwise required by 28 U.S.C. § 5841 (e).

99. On November 14, 2024, the Defendants again filed a fraudulent amendment to CPI's Annual Report through the SCC internet portal, again changing the Registered Agent's address back to Defendant Blocker's private mailbox service in Woodbridge and utilizing another Protonmail email address. SCC filing numbers 2411147914609 and 2411147914703.

100. On November 18, 2024, the Defendants mailed via United States Postal Service a series of letters from fictitious community organizations to various persons and agencies making false and disparaging statements regarding LeFande.

101. Sometime prior to November 25, 2024, the Defendants contacted the administrators of the internet website gunbroker.com in Kennesaw, Georgia through internet email and falsely claimed to represent CPI. The Defendants falsely claimed that LeFande was not permitted to sell products on its website. Those administrators suspended CPI's account with the website and CPI lost numerous internet sales as a result.

102. By the end of 2024, Defendant Blocker had begun extorting money from non-parties Nazim Ahmed and Anubis Engines in Connecticut. After Ahmed refused Blocker's demand for $4,000.00, Blocker began making disparaging claims against Ahmed and Anubis Engines on social media pages including Linkedin. Such conduct violated, *inter alia*, 18 U.S.C. § 875 (d).

103. Throughout 2024, 2025 and into 2026, the Defendants made repeated false filings with the Virginia State Corporation Commission, changing the mailing address of CPI back to Defendant Blocker's private mailbox service in Woodbridge. Virginia State

Corporation Commission Entity ID: F1641598. Each time LeFande would file to correct the address to the Midland post box, the Defendants would file again to change it back again through the State Corporation Commission's internet portal.

104. On December 20, 2024, LeFande reported to ATF on its Form 5320.2 (known as "Form 2") that he had manufactured a dealer sample machine gun on behalf of CPI. LeFande completed the form in the correct manner and listed the correct premises and mailing addresses for CPI in Midland, Virginia.

105. The Form 2 was approved by ATF NFA Branch on January 8, 2025. NFA Control Number 20251584894. LeFande retains the approved document to the present day in CPI's official FFL records.

106. On January 13, 2025, LeFande filed suit in 1:25-cv-00054 in this court.

107. On January 19, 2025, the Virginia Department of Criminal Justice Services announced its intention to fine CPI for the 2024 lapse in insurance coverage. A copy of the September 12, 2024 email from the Defendants was attached to the report.

108. Some time prior to February 13, 2025, ATF inquired to the Defendants regarding the discrepancy in the premises address on LeFande's Form 2. The Defendants falsely reported to ATF that LeFande was unauthorized by CPI to manufacture firearms. Such conduct violated, *inter alia*, 18 U.S.C. §§ 924 (a)(1), 1001 (a).

109. On February 27, 2025, LeFande was visited at Midland Training Center by two ATF Special Agents, Jose Oquendo and Michael Jordan of the Falls Church field office. The agents served LeFande with a letter, addressed to him personally and dated February 13, 2025, claiming LeFande was in possession of an unregistered machine gun. LeFande immediately invited the agents for an inspection of the entire facility. LeFande demonstrated that he was in possession of CPI's FFL accountable firearms inventory, in

possession of all records required of CPI by 27 CFR § 478.121, and displayed current valid FFL and SOT certificates from ATF showing the Midland address as the correct premises location. LeFande further demonstrated the high security at the facility and the heavy machinery present necessary and appropriate for the manufacture of firearms.

110. On February 28, 2025, the Defendants published defamatory statements about LeFande and other persons on the ATF Facebook page using the fictitious user names Hollis Lee and Charles Diya. In violation of Code of Virginia § 18.2-186.4, the Defendants included home addresses of some of the persons named in the postings with the intent to coerce, harass and intimidate these supporters and members of CPI.

111. On March 5, 2025, Defendant Blocker served a trespass order upon Larry Henderson, LeFande's process server named in the February 21 return of service in 1:25-cv-54, for both of her properties in Woodbridge.

112. On or about March 25, 2025, the Defendants made an anonymous email complaint to the Fauquier County Department of Social Services, falsely claiming the elderly owners of the farm where CPI's Midland facility is located were being victimized by Henderson. The subsequent investigation by the Department of Social Services indicated the claims were unfounded.

113. On March 27, 2025, Henderson was served with a trespass notice for Defendant Allen's residence by the Prince William County Sheriff. The notice bore a facsimile signature purporting to be Allen's.

114. Around this time, the Defendants posted on the social media platform X using the user name BadWeldsLaFande disparaging claims regarding LeFande and Henderson.

115. The Defendants' conduct regarding Henderson violated 18 U.S.C. § 1501, as Henderson was continuing to attempt to effect service on Defendant Torbenko at that time and the Defendants' conduct was necessarily intended to obstruct such service.

116. In April of 2025, the February 13, 2025 ATF letter to LeFande became public over his objections. The Defendants began repeatedly publishing the letter on file sharing websites shortly thereafter. The letter was known to the Defendants to be false and defamatory and was published specifically for the purpose of injuring LeFande in his trade and profession.

117. In July of 2025, the Defendants began emailing various FFL dealers, some of whom were previously unknown to LeFande, and provided links to the letter.

118. On August 15, 2025, Reddit user EyelessBrando asked LeFande via the website's messaging platform, "do you have some weird kind of stalker haters? after I answered your comment a user sent a link to imgur of an ATF letter made out to Matthew lafande. I'm like dam who did this guy piss off. Do these people have nothing better to do." [Capitalization, grammar, spelling *sic*].

119. Reddit moderator IronReaper7x made a similar report to LeFande the following day and provided screenshots of an exchange with RelativePool3087.

120. The Defendants continued to make multiple postings and comments regarding LeFande on various Reddit forums utilizing the user names RelativePool3087, Lafande-Criminal, BadWeldsLafande, No_Review_4530 and Old_Key_0.

121. In October of 2025, the Defendants falsely reported to the ATF that LeFande had stolen a parts kit of an obscure Soviet firearm. Such conduct violated, *inter alia*, 18 U.S.C. § 1001 (a). The Defendants repeated these false allegations on

various websites. This report was known to the Defendants to be completely false and the report was made solely to injure LeFande in his trade and profession.

122. On October 22, 2025, the same armed agents of ATF again made an unannounced visit to CPI's FFL premises address in Midland, Virginia. They accompanied two civilian specialists from ATF's NFA Branch in Martinsburg, West Virginia. Rather than making any effort whatsoever to investigate the ongoing multitude of frauds being perpetrated by the Defendants against the agency including violations of 18 U.S.C. § 924, a code section specifically enforced by their agency, they expended the entirety of their inspection inquiring about the manner in which the obscure Soviet firearm was demilitarized by being cut apart into multiple pieces. The agents absolutely refused to discuss any of the obvious ongoing crimes being committed against LeFande, CPI and ATF. Once again, their surprise inspection found no violations of any kind.

123. On December 26, 2025, the Defendants posted to Reddit using user name RelativePool3087 that a "known criminal located in Midland Virginia is attempting to sell a stolen parts kit". The posting included a reference to the Soviet firearm parts kit ATF had just examined at the CPI facility and a link to the February 13, 2025 ATF letter.

124. On January 12, 2026, LeFande as Secretary of CPI, noticed a Special Board Meeting of the CPI Board of Directors for January 24, 2026.

125. On January 22, 2026, Defendant Gudz claimed to LeFande through a telephone text message that the ATF intended to conduct a compliance inspection at CPI's Midland facility the following day. Gudz demanded access to and production of all firearms and records at the facility. Such claim was false, the ATF had no inspection scheduled for the facility. The Defendants had conspired to make a false claim of an ATF

inspection to gain access to the secure facility and steal all of the regulated firearms within.

126. On January 23, 2026, Defendants Gudz, White and Allen, together with an unidentified fourth person, likely Defendant Torbenko, appeared at the Midland facility. No ATF personnel were present. Gudz repeatedly telephoned to LeFande demanding entry while displaying a firearm.

127. At this time, Defendant Gudz claimed to LeFande over the telephone to have applied to ATF to also become a "Responsible Person" for CPI.

128. Such an application should it exist, would also be a false statement under oath to the ATF transmitted through the United States Postal Service, as Gudz was without authority of the CPI Board of Directors to make any such application. Making such an application would violate, *inter alia*, 18 U.S.C. §§ 924 (a)(1), 1001 (a), 1621 (2).

129. Despite the Defendants' efforts to interfere with the January 24, 2026 Board of Directors' meeting, a quorum was achieved and a resolution passed reaffirming LeFande as the sole "Responsible Person" for the CPI FFL.

130. In Spring of 2026, the Defendants filed a renewal for the CPI FFL. LeFande did not receive a renewal notice due to the ATF's refusal to correct its obviously incorrect records of CPI's address. Such renewal action constituted a new and separate false statement under oath by the Defendants to the ATF and was delivered via United States Postal Service. Such conduct violated, *inter alia*, 18 U.S.C. §§ 924 (a)(1), 1001 (a), 1621 (2).

131. Over the ongoing objections of LeFande, the ATF has subsequently granted the FFL renewal to the Defendants.

132. Sometime between March 1, 2026 and April 14, 2026, the Defendants contacted the administrators of the DARPAConnect website. The Defendants made false and defamatory claims to those administrators and demanded that CPI's information regarding the Midland facility be taken down regarding its present participation in Defense Advanced Research Projects Agency (DARPA) activities. LeFande has been unable to have those administrators restore this information. Such false claims were made by the Defendants to injure LeFande in his trade and profession.

133. As a direct and proximate result of the Defendants' frauds, LeFande has been personally injured in an amount greater than $100,000.00, including expenditures to replace stolen equipment belonging to either LeFande or CPI, loss of salary and fees for his services to CPI and other persons, and damage to his person and reputation.

134. The Defendants unlawfully retain or have illegally sold and retained the proceeds of more than $150,000.00 in tools, tooling, equipment and supplies belonging to CPI necessary for LeFande to conduct the business of CPI and to earn a living.

135. The Defendants further unlawfully retain the entirely of LeFande's personal belongings, including all of his tools, his personal records and documents, and all of his household goods and furniture.

**Predicate Offense #1**
**MAIL FRAUD I**
**18 U.S.C. § 1341**

136. The paragraphs above are incorporated by reference as if fully set forth herein.

137. The Defendants devised a scheme to unlawfully take control of CPI away from LeFande for their own personal benefit.

138. After the creation of this scheme, the Defendants repeatedly made false forwarding orders to the United States Postal Service to redirect the mail of CPI to her private mailbox service.

139. After the creation of this scheme, the Defendants made false annual reports to the Virginia State Corporation Commission to change the address of CPI's registered office and registered agent to her own private mailbox service.

140. After the creation of this scheme, the Defendants made repeated false statements under oath and mailed them to the ATF via the United States Postal Service.

141. After the creation of this scheme, the Defendants made false change of address requests to the ATF to change the mailing address of CPI to her own private mailbox service.

142. The Defendants are known to have received at least one NFA tax stamp, a copy of CPI's FFL and a copy of CPI's Special Occupational Tax certificate at Defendant Blocker's private mailbox service as a result.

143. Also as a result, LeFande received multiple notices from the Postal Service mailed to him in Midland notifying him of the fraudulent change of address orders.

144. "Whoever, having devised or intending to devise any scheme or artifice to defraud… for the purpose of executing such scheme... knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1341.

145. As a result of these unlawful acts, the Defendants were able to take control of CPI's ATF eForms account to the exclusion of LeFande without any lawful cause.

146. As a result of these unlawful acts, the Defendants induced ATF to mail through the United States Postal Service to Blocker a copy of CPI's FFL certificate, a NFA tax stamp and Special Occupational Tax certificate otherwise property of CPI.

**<u>Predicate Offense #2</u>**
**MAIL FRAUD II**
**18 U.S.C. § 1341**

147. The paragraphs above are incorporated by reference as if fully set forth herein.

148. The Defendants conspired to make a fraudulent series of applications to make the Defendants "Responsible Persons" for CPI under 18 U.S.C. § 841 (s). Such conspiracy was in furtherance of their scheme to unlawfully take control of CPI away from LeFande for their own personal benefit.

149. The Defendants mailed these applications to the ATF through the United States Postal Service.

150. "[E]ach mailing in furtherance of a scheme to defraud is a separate offense under 18 U.S.C. § 1341." *United States v. Stull*, 743 F.2d 439, 444 (6th Cir. 1984). "Each use of the mails in furtherance of a scheme to defraud therefore may be separately and cumulatively punished." *Id.* at 444-45.

**Predicate Offense #3**
**WIRE FRAUD I**
**18 U.S.C. § 1343**

151. The paragraphs above are incorporated by reference as if fully set forth herein.

152. On or about November 13, 2023 and again on or about October 11, 2024, the Defendants used the internet portal of the United States Postal Service to fraudulently order the redirection of CPI's mail to Defendant Blocker's private mailbox service in Woodbridge.

153. "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire... in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1341.

**Predicate Offense #4**
**WIRE FRAUD II**
**18 U.S.C. § 1343**

154. The paragraphs above are incorporated by reference as if fully set forth herein.

155. Defendant Blocker, using interstate telephone lines, called the ATF in Martinsburg, West Virginia and falsely claimed to be a Management Partner [*sic*] of CPI.

156. Defendant Blocker has never been any kind of officer of CPI and has never had any legal authority to act on its behalf. No such title as she describes could exist in a non-stock corporation.

157. As a direct result of Blocker's false claims, she was able to commandeer CPI's eForms internet account and begin accessing its transaction data and conducting new transactions without lawful authority.

158. Such fraud was conducted in execution of the Defendants' scheme to take control of CPI away from LeFande.

**Predicate Offense #5**
**WIRE FRAUD III**
**18 U.S.C. § 1343**

159. The paragraphs above are incorporated by reference as if fully set forth herein.

160. On October 7, 2024, Defendant Blocker attempted to defraud the Virginia Department of General Services by impersonating a member of CPI through a falsely named internet email address alias from her known email service provider. Blocker transmitted her false claims over the internet to a state government employee for the purpose of unlawfully receiving federal government surplus property for herself.

161. Such federal surplus property is property necessarily implicated in interstate commerce for the purposes of 18 U.S.C. § 1343.

**Predicate Offense #6**
**WIRE FRAUD IV**
**18 U.S.C. § 1343**

162. The paragraphs above are incorporated by reference as if fully set forth herein.

163. The Defendants fraudulently claimed to represent CPI in an internet email exchange with administrators of gunbroker.com in Kennesaw, Georgia. Such exchange

was made in furtherance of the Defendants' scheme to take control of CPI away from LeFande.

**Predicate Offense #7**
**WIRE FRAUD V**
**18 U.S.C. § 1343**

164. The paragraphs above are incorporated by reference as if fully set forth herein.

165. On January 22, 2026 and again on January 23, 2026, Defendant Gudz used telephone and internet lines to falsely impersonate a government agency in an attempt to gain access to CPI's secure facility in Midland, Virginia and together with other Defendants, commit an armed robbery of the firearms contained therein and seize control of CPI.

**Predicate Offense #8**
**VIOLATION OF THE HOBBS ACT**
**18 U.S.C. § 1951**

166. The paragraphs above are incorporated by reference as if fully set forth herein.

167. Sometime between January 7 and January 22, 2026, the Defendants formed a conspiracy to commit a robbery of CPI's Midland facility of its regulated firearms.

168. On January 22, 2026, Defendant Gudz. in an affirmative act in furtherance of this conspiracy, used telephone and internet lines to falsely impersonate a government agency in an attempt to gain access to CPI's secure facility.

169. On January 23, 2026, in a further affirmative act in furtherance of this conspiracy, Defendants Gudz, White, Allen and an additional unknown person appeared at the Midland facility brandishing firearms and demanded entry to the facility.

170. These Defendants and the unknown person did not arrive in a single vehicle, but four separate large trucks and SUVs necessary to remove the entire inventory of firearms from the facility.

171. The NFA regulated firearms contained within the Midland facility are necessarily implicated in interstate commerce.

172. The Defendants acted with the intent to disrupt CPI's participation in such interstate commerce.

173. The conspiracy and attempted robbery of CPI's Midland facility by the Defendants violated, *inter alia*, 18 U.S.C. § 1951 (a).

174. The attempted obtaining of CPI's property by LeFande's consent induced by wrongful use of threatened force, violence, fear, and under color of pretended official right violated, *inter alia*, 18 U.S.C. § 1951 (a).

**<u>Count One</u>**
**VIOLATION OF 18 U.S.C. § 1962 (b) and (c).**

175. The paragraphs above are incorporated by reference as if fully set forth herein.

176. The Defendants have engaged in repeated violations of 18 U.S.C. § 1341 and 18 U.S.C. § 1343 towards a joint goal of taking control of CPI, a corporation involved in interstate commerce.

177. Such violations constitute a pattern of racketeering activity as defined by 18 U.S.C. § 1961 (1)(B).

178. As a direct result of such racketeering activity, the Defendants have participated in and acquired *de facto* control of CPI sufficient to implicate 18 U.S.C. § 1962 (b) and (c). See *Reves v. Ernst Young*, 507 U.S. 170, 179 n.4 (1993).

179. Such conduct is repetitive and ongoing, and will continue into the future without this court's intervention. The Plaintiff's damages will increase over time.

180. Under 18 U.S.C. § 1964 (c) a person injured in his business or property by reason of a violation of 18 U.S.C. § 1962 may sue therefor in the United States district court and shall recover threefold the damages he sustains and the cost of the suit.

**Count Two**
**VIOLATION OF CODE OF VIRGINIA § 18.2-499**

181. The paragraphs above are incorporated by reference as if fully set forth herein.

182. Code of Virginia §18.2-499 (A) provides "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act, shall be jointly and severally guilty of a Class 1 misdemeanor. Such punishment shall be in addition to any civil relief recoverable under § 18.2-500."

183. Code of Virginia §18.2-500 (A) provides "[a]ny person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-

499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel, and without limiting the generality of the term, 'damages' shall include loss of profits." Under section B, this court "shall have jurisdiction to hear and determine the issues involved, to issue injunctions pendente lite and permanent injunctions…"

184. The Defendants have formed a conspiracy to injure LeFande in his trade and profession and have committed multiple affirmative acts enumerated above in furtherance of this conspiracy.

185. The initiators of the conspiracy include Defendants Blocker and Torbenko, and certain non-parties, who are not members of CPI.

186. Members, Officers and Directors of CPI who participated in the conspiracy were not acting in the course of their employment with CPI.

187. Members, Officers and Directors of CPI who participated in the conspiracy acted with motivations independent of their interest in the corporation's success.

188. Intracorporate conspiracy doctrine is therefore inapplicable herein and not a bar to recovery.

## Count Three
## COMMON LAW FRAUD

189. The paragraphs above are incorporated by reference as if fully set forth herein.

190. The Defendants have made repeated false representations to government agencies and private persons regarding their authority to act on behalf of CPI.

191. The Defendants have made repeated false representations to government agencies and private persons regarding the lawfulness of LeFande's conduct and his authority to administer CPI's accounts.

192. Such misrepresentations regard present, material facts.

193. Such misrepresentations were made intentionally and knowingly.

194. Such misrepresentations were made with the intent to mislead.

195. These misrepresentations were reasonably relied upon by the party misled. In certain instances, LeFande reserves claims against the parties misled as to negligent reliance on obviously false representations.

196. LeFande has been directly and proximately injured as a result of the Defendants' unlawful actions.

## Count Four
## CONVERSION

197. The paragraphs above are incorporated by reference as if fully set forth herein.

198. The Defendants have wrongfully assumed the right of ownership over goods or chattels belonging to CPI and LeFande, in denial of or inconsistent with LeFande's rights.

199. LeFande had at the time of conversion, and maintains to the present day, a right to possession of CPI's property and to his own property.

200. The Defendants have wrongfully exercised dominion and control over this property, thus depriving LeFande of his rightful possession.

201. The conversion of CPI's property for the Defendants' private inurement violates, *inter alia*, 26 U.S.C. § 501. See 26 U.S.C. §4958(c).

202. LeFande has been directly and proximately injured as a result of the Defendants' unlawful actions.

**Count Five**
**ASSAULT**

203. The paragraphs above are incorporated by reference as if fully set forth herein.

204. The Defendants have acted intending to cause bodily harm to LeFande.

205. The surreptitious introduction of dangerous drugs to LeFande's body demonstrates the Defendants' ability to inflict such harm and an overt act intended to place him in reasonable fear of imminent bodily harm.

206. LeFande has been directly and proximately injured as a result of the Defendants' unlawful actions.

**Count Six**
**CONSPIRACY**

207. The paragraphs above are incorporated by reference as if fully set forth herein.

208. The Defendants have combined and acted in concert, by repeated unlawful overt acts, to accomplish the unlawful misappropriation of CPI's property for their personal use and to injure LeFande.

209. LeFande has been directly and proximately injured as a result of the Defendants' unlawful actions.

**Count Seven**
**DETINUE**
**CODE OF VIRGINIA § 8.01-114**

210. The paragraphs above are incorporated by reference as if fully set forth herein.

211. A proceeding in detinue to recover personal property unlawfully withheld from the Plaintiff may be brought on a warrant or motion for judgment.

**Count Eight**
**DEFAMATION *PER SE***

212. The paragraphs above are incorporated by reference as if fully set forth herein.

213. The Defendants made repeated statements upon pretended authority of CPI, claiming or implying LeFande had stolen property of CPI or was acting unlawfully in the manufacture of firearms.

214. Such statements were known to the Defendants to be false, or made with a reckless disregard for whether they were false or not.

215. Such statements imputed that LeFande was committing theft or conversion, crimes involving moral turpitude.

216. These statements necessarily prejudiced LeFande in his trade and profession.

217. It is difficult, if not impossible, to prove with mathematical precision the quantum of damages for injury to reputation, humiliation, and embarrassment which may flow from a defamation. Compensatory damages for LeFande are therefore presumed.

**Count Nine**
**DEFAMATION *PER QUOD***

218. The paragraphs above are incorporated by reference as if fully set forth herein.

219. The Defendants have made knowingly false representations to third parties.

220. The defamatory meaning of these false representations is not apparent on the face of the words, but arise from inference in combination with known extrinsic facts.

221. LeFande has been directly and proximately injured as a result of the Defendants' unlawful actions including special damages of more than $100,000.00.

**Count Ten**
**BREACH OF FIDUCIARY DUTY**

222. The paragraphs above are incorporated by reference as if fully set forth herein.

223. As officers and directors of CPI, Defendants Allen, Gudz and White owed an unwavering fiduciary duty and loyalty to CPI above any personal gain or desire.

224. By allowing Defendant Blocker to infiltrate CPI's FFL and ATF accounts, Defendants Allen, Gudz and White immediately endangered the legal authority of CPI to conduct its business.

225. By conspiring to assault LeFande and give Defendant Blocker some kind of medicinal control over LeFande's mentation, the Defendants further jeopardized CPI's business affairs and finances.

226. Such unlawful acts by Defendants Allen, Gudz and White breached their fiduciary duty to CPI.

227. The Defendants have engaged in willful misconduct and knowing violation of the criminal law and are therefore not entitled to immunity under Code of Virginia § 13.1-870.1.

228. As an officer and director of CPI, as well as personally, LeFande has been directly and proximately injured as a result of the Defendants' unlawful actions.

## Count Eleven
## TORTIOUS INTERFERENCE WITH COMMERCE AND CONTRACTUAL RELATIONS

229. The paragraphs above are incorporated by reference as if fully set forth herein.

230. By unlawfully excluding LeFande from CPI's accounts, the Defendants have intentionally interfered with ordinary contractual relations necessary for LeFande to maintain CPI's corporate standing and financial viability.

231. To maintain CPI's existence, LeFande has made large personal financial expenditures he cannot recoup from the corporation.

232. As an officer and director of CPI, LeFande has been directly and proximately injured as a result of the Defendants' unlawful interference.

233. LeFande has been further injured in his own ability to conduct a trade and profession and earn a living.

## Count Twelve
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

234. The paragraphs above are incorporated by reference as if fully set forth herein.

235. By excluding LeFande from CPI's accounts and by making repeated false statements regarding LeFande's conduct, the Defendants have unlawfully and intentionally interfered with ordinary contractual relations necessary for LeFande to maintain CPI's corporate standing and financial viability including prospective contractual relations with persons perhaps yet unknown to LeFande.

236. LeFande has been directly and proximately injured as a result of the Defendants' unlawful conduct.

## Count Thirteen
## TRESPASS TO CHATTELS

237. The paragraphs above are incorporated by reference as if fully set forth herein.

238. The Defendants have without authorization intentionally used and intermeddled with personal property otherwise in the rightful possession of LeFande and used by LeFande to conduct CPI's business activities. The property of CPI has been impaired as to its "condition, quality, or value," and the Defendants must compensate LeFande for the loss of use of the item. The Defendants have illegally seized LeFande's personal property and CPI's property entrusted to LeFande and converted it to the Defendants' use.

239. LeFande has been directly and proximately injured as a result of the Defendants' unlawful conduct.

## Count Fourteen
## SLANDER TO TITLE

240. The paragraphs above are incorporated by reference as if fully set forth herein.

241. The Defendants have published false claims that LeFande has stolen various property, including $4,500.00 in Motorola radios and a $21,000.00 Soviet firearm parts kit.

242. LeFande had a valid property interest in such property.

243. Such false claims were made with malice and a reckless disregard for the truth.

244. The publication has caused special damages of at least $25,500.00 to LeFande.

## PRAYER FOR DECLARATORY RELIEF

245. The paragraphs above are incorporated by reference as if fully set forth herein.

246. The Plaintiff asks for a legal determination by this court that he has the sole authority to administer the accounts of CPI.

247. The Plaintiff asks for a legal determination by this court that he is the sole lawful "Responsible Person" for CPI's FFL.

248. Under 28 U.S.C. § 2201, this court may make such a determination, exclusive of any specific action or an award of damages.

## PRAYER FOR INJUNCTIVE RELIEF

249. The paragraphs above are incorporated by reference as if fully set forth herein.

250. This court maintains an inherent authority to enjoin the illegal acts of the Defendants.

251. The Plaintiff asks for an order by this court for the Defendants to return to the Plaintiff all property, belonging either to CPI or the Plaintiff, in their possession.

252. The Plaintiff asks for an order by this court for the Defendants to cease purporting to represent CPI in any filing, application or communication with any person or entity and to expel those Defendants who are members of CPI from the corporation.

253. The Plaintiff asks for an order by this court for the Defendants to cease making any false statements regarding the Plaintiff to any person or agency.

254. The Plaintiff asks for an order by this court permanently enjoining the Defendants from engaging in any activity requiring an ATF FFL, either individually or through any business entity.

255. The Plaintiff asks for an order by this court requiring the Defendants to forfeit any instrumentality possessed or controlled by the Defendants utilized in the perpetration and perpetuation of these unlawful acts. The Plaintiff further asks for an order of this court requiring the Defendants to forfeit any proceeds received in the perpetuation and perpetration of these unlawful acts. Such instrumentalities and proceeds should necessarily include business entities, email addresses, website domains, real estate property, vehicles and computer devices.

256. The Plaintiff asks for an order of this court to correct any inaccurate record of any government agency directly or indirectly caused by the misrepresentations of the Defendants.

257. The Plaintiff asks for a protective order against the Defendants as provided under Code of Virginia § 16.1-279.1 and § 19.2-152.10 prohibiting acts of violence, force or threat or criminal offenses against the Plaintiff, prohibiting contact with the Plaintiff and his associates, and all other appropriate relief as authorized by the Code.

258. The Plaintiff asks this court to order that it retains jurisdiction over the matter for the purposes of enforcing its own judgments.

WHEREFORE, the Plaintiff demands judgment against the Defendants with threefold damages awarded according to proof at trial under applicable law for the loss of revenue and incidental damages, and such additional damages for injuries as may continued to be suffered by the Plaintiff until his rightful access to CPI's accounts and affairs is restored, the imposition of reasonable restrictions on the future activities of the Defendants including, but not limited to, prohibiting the Defendants from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; and making due provision for the rights of the Plaintiff to include restoration of his control of CPI's affairs. The Plaintiff further asks for an award of costs and fees, as provided by 18 U.S.C. § 1964 (c) and Code of Virginia § 18.2-500.

There being an inadequate remedy at law, the Plaintiff asks for equitable relief.

Respectfully submitted,

Matthew August LeFande
PO Box 22
Midland VA 22728
(540) 346-3760
matthew.lefande@cpi-va.us
PLAINTIFF, *pro se*

**VERIFICATION**
**18 U.S.C. § 1746**

I hereby verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, to the best of my present information and belief.

Matthew August LeFande

**L.R. 83.1 (N)(2) CERTIFICATE**

I declare under penalty of perjury that no attorney has prepared, or assisted in the preparation of this document.

Matthew August LeFande